430 So.2d 680 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Reginald DAVIS, Defendant-Appellant.
No. 15214-KA.
Court of Appeal of Louisiana, Second Circuit.
March 28, 1983.
Writ Denied June 3, 1983.
*681 Gravel, Robertson & Brady by Thomas K. Brocato, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James David Caldwell, Dist. Atty. by Moses Williams, Jr., Asst. Dist. Atty., Tallulah, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
*682 FRED W. JONES, Judge.
After having been charged in a Bill of Information with armed robbery, the defendant, Reginald Davis, was tried and found guilty by a jury of simple robbery (R.S. 14:65), and sentenced to imprisonment at hard labor for seven years. Defendant appealed his conviction and sentence, assigning ten trial court errors, three of which were abandoned.

Factual Context
On February 1, 1982 the attendant at a Citgo Service Station in Tallulah was robbed by a lone gunman. Several days later law enforcement officers picked up Ira Lee Crift in McGee, Arkansas for questioning in connection with the armed robbery. Crift gave statements implicating Donald Forte, Reginald Davis, Warren Jones and himself in the offense.
Davis and his brother, Warren Jones, were arrested on February 7, 1982 for their alleged involvement in the armed robbery.
Forte was apprehended by the FBI on April 9, 1982 in Kansas City, Missouri and charged with interstate flight to avoid prosecution. Several days later Madison Parish authorities went to Kansas City, secured custody of Forte on the basis of the armed robbery charge and returned him to this state for prosecution.
All four of these individuals were charged by Bills of Information with armed robbery of the Citgo Service Station attendant. Davis alone went to trial in July 1982. Two of the State's principal witnesses in this trial were Crift and Forte, both of whom related substantially the following account of pertinent events:
On February 1, 1982, Crift and Forte traveled from Arkansas to Tallulah where Forte planned to visit a girl friend. Later that afternoon the two contacted Forte's cousin, Davis, at the latter's residence. During the course of that visit, Crift, Forte and Davis conspired to rob the Citgo Service Station attendant. Prior to leaving the dwelling on that venture, Davis was handed a green jumpsuit by his brother, Warren Jones. Crift, Forte and Davis then got into Davis' late model Buick and Davis drove to the Citgo Service Station.
Upon arriving at that place of business at about 6:15 o'clock p.m., Davis went in and purchased a package of gum. Returning to the car, he drove to the end of the station's driveway and parked on the highway shoulder. Davis proceeded to get out of the vehicle, raise the hood and stand in front of the automobile, as though experiencing car trouble. In the meantime, dressed in the green jumpsuit, Forte walked back to the service station and entered, drew a pistol which he had gotten from Davis, and ordered the attendant, Lorraine McClodden, to hand over all of the money in the cash register. The service station attendant, in response to this order, gave Forte some $900 in cash.
Forte returned to Davis' car and they immediately departed the crime scene. Davis drove down a deserted road south of Tallulah, stopped his vehicle, and the three divided equally the fruits of the armed robbery. They also discarded the green jumpsuit. Davis drove from there back to his place of residence, where Forte and Crift got into Forte's automobile and returned to Arkansas.

Assignment of Error No. 3
Defendant argues in this assignment that the trial court erred in overruling his objection to testimony relating to statements and acts of Warren Jones, because the State failed to lay a proper foundation for the admissibility of that testimony by establishing a prima facie case of conspiracy.
Defendant's objection was leveled at the trial testimony of two Tallulah police officers, Billy Hutto and Rose Warren. Hutto stated that Warren Jones telephoned him between 6:00 and 6:15 o'clock p.m. on the evening of the robbery and requested that the officer come to Jones' house for a social visit (which had occurred on prior occasions). Hutto obliged Jones, stayed at his residence for a few minutes and, upon departing, received news of the armed robbery.
*683 Warren testified that after the robbery Jones called the Tallulah police department to report his sighting of someone matching the description of the robbery suspect on the south side of town, some distance from the crime scene.
The State apparently presented this testimony as tending to show that defendant's brother, Warren Jones, as his role in the robbery conspiracy, sought to divert the attention of a patrol officer while the crime was in progress and, subsequently, to distract law officers from the trail of the offenders.
La.R.S. 15:455 provides:
Each conspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established. (emphasis added)
Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime. La.R.S. 14:26.
Although a defendant may not be charged with the inchoate crime of conspiracy but only with a substantive offense such as armed robbery, reference to the law of conspiracy may be relevant for the State to take advantage of pertinent evidentiary rules. State v. Gutter, 393 So.2d 700 (La. 1981).
Proof of a conspiracy may be made with either direct or circumstantial evidence. State v. Brown, 398 So.2d 1381 (La. 1981).
A prima facie case of conspiracy is established when the State introduces evidence which, if unrebutted, would be sufficient to establish the fact of conspiracy. State v. McCoy, 395 So.2d 319 (La.1980).
The requirement that the State make out a prima facie case of conspiracy by laying a foundation of independent evidence has resulted in considerable confusion. See Pugh, La.Evidence Law, 1978 Supplement, p. 438. In a series of cases the Louisiana Supreme Court adopted the view that the trial judge must find a prima facie case before the existence of the conspiracy becomes a question for the jury. State v. Kaufman, 331 So.2d 16 (La.1976); State v. Carter, 326 So.2d 848 (La.1975); State v. Brown, 326 So.2d 839 (La.1975). It is noteworthy, however, that these cases dealt with the propriety of argument and jury instructions on the law of conspiracy rather than with the question of whether evidence could be admitted before the trial judge's finding of a prima facie case.
Here, testimony concerning the actions of Warren Jones was offered by the State to establish a prima facie case of involvement in the conspiracy to commit robbery. However, rather than only serving as a predicate for the admissibility of hearsay statements by Jones tending to implicate Davis, this conduct by Jones also constituted "acts occurring outside the presence of the defendant" as referred to in La.R.S. 15:455. In other words, the same evidence was offered both to lay the foundation for prima facie showing of the conspiracy and to demonstrate what was intended to be proved after the laying of a proper foundation. In such case the better practice would be for the trial judge to first hear the predicate evidence outside the presence of the jury and determine whether the State had made its prima facie showing of conspiracy. However, under the particular circumstances of this case, in which the testimony of officers Hutto and Warren was unrefuted and clearly established through circumstantial evidence a prima facie case of conspiracy involving Davis and Warren Jones, we find no prejudice to the defendant in the admitting of testimony relating to actions of Jones outside the presence of Davis.
This assignment lacks merit.

*684 Assignment of Error No. 5

During the course of his questioning at the trial by the State, Forte alluded to his awareness, prior to the robbery, of an alarm system at the Citgo Service Station. When queried concerning the source of that knowledge, Forte replied that he was so advised by the defendant (who had worked at the station). In this assignment, defendant contends that this asserted statement was inculpatory and that the State failed to give prior notice as required by La.C.Cr.P. Art. 768.
The term "inculpatory statement" employed in Article 768 refers to a statement made by the defendant, after a crime has taken place, which implicates the defendant in its commission. State v. Brent, 347 So.2d 1112 (La.1977).
The statement under consideration, allegedly made before commission of the robbery, was obviously not an inculpatory statement within the meaning of Article 768. Consequently, notice by State was not required.
This assignment is without merit.

Assignment of Error No. 6
After the State presented Forte's testimony, the trial was adjourned until the following morning. At that time the State announced its intention to call Crift as its next witness. Prior to Crift testifying before the jury, the defendant requested and was granted permission to question him relative to a possible violation of the rule of sequestration. In response to that interrogation, Crift stated that, following adjournment of court the day before, Deputy Harmon told him what Forte had testified to. The conversation was described as having lasted only a few minutes.
Defendant argues that the trial judge committed reversible error in permitting Crift to testify.
The State contends that Crift was never placed under the rule of sequestration. The record is not clear on this point. Be that as it may, not every violation of a sequestration order must result in an exclusion of the offending witness' testimony. The purpose of sequestration is to assure that testimony from the witness will be based upon his own knowledge. In the absence of evidence that the witness' testimony was tainted by his violation of the sequestration order, the trial judge does not err in permitting him to testify. State v. Parker, 421 So.2d 834 (La.1982).
Although Crift candidly admitted that Harmon discussed Forte's testimony with him, no attempt was made by the defendant in the cross-examination of Crift to establish whether detailed information was furnished to Crift by Harmon. Furthermore, there was no showing that Crift's trial testimony differed materially from his pre-trial statements. Therefore, defendant made no showing that Crift's testimony was in any respect tainted by a violation of the sequestration order.
This assignment lacks merit.

Assignments of Error Nos. 7 & 8
These assignments relate to defendant's complaint that the State violated our discovery rules by failing to inform the defendant of an oral pre-trial statement made by Crift to Harmon which was allegedly inconsistent both with a pre-trial written statement given by Crift as well as with his trial testimony.
In his discovery motion the defendant specifically requested notice of all statements given to investigating officers in the robbery case. In response the State furnished a copy of a written statement given by Crift to Harmon. However, it was learned during the trial (but before Crift took the stand) that Crift had also made an oral statement to Harmon (prior to the written statement) which Harmon tape recorded. The district attorney's office was unaware of the oral statement and of the existence of this recording. Upon learning of the existence of the tape, the prosecutor turned it over to the defense and a transcription was made, one day prior to Crift taking the witness stand in the trial.
*685 We note, first, that there was no evidence of bad faith on the State's part in failing to advise the defendant, in response to the discovery motion, of the existence of this tape recorded statement. Next, the defendant did not request a trial recess in order to have additional time in which to study the transcript of the oral statement. Therefore, he has made no showing of prejudice. See State v. Quimby, 419 So.2d 951 (La.1982). As a matter of fact, the tape was played for the jury, which then had the opportunity to note any inconsistencies between the oral statement and Crift's written statement and trial testimony.
The trial judge did not err in his ruling on this issue. Consequently, these assignments are without merit.

Assignment of Error No. 9
The trial judge's denial of defendant's motion for a new trial is the basis for this assignment. In addition to reurging errors previously discussed, defendant also contends he was entitled to a new trial because of improper contact between the jury and a State witness (Deputy Harmon) and because of the alleged insufficiency of evidence for conviction.

Improper Jury Contact
At the hearing on the motion for a new trial the defendant called three individuals who had served as jurors in this case. Each testified that Deputy Harmon (a witness for the State) on several occasions during the trial transported some of the jurors to lunch and was seated with them while eating. They denied that Harmon discussed the case with them. In fact, they said that Harmon hardly spoke to the jurors about anything.
As a general rule officers who are witnesses at a criminal trial should have no out-of-court contact with the jurors. In this case, however, any presumption of prejudice to the defendant was effectively overcome by the jurors' unrefuted testimony.
The trial judge did not err in denying a new trial on this basis.

Insufficiency of Evidence
Defendant also argued for a new trial on the ground of insufficiency of evidence, pointing out the inconsistencies in the pretrial statements and trial testimony of Forte and Crift, upon whom the State primarily relied to secure the conviction.
In reviewing the denial of a motion for a new trial requested on the basis of alleged insufficiency of evidence, it must be determined whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to be proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. West, 419 So.2d 868 (La.1982).
It is apparent that discrepancies existed in the pre-trial statements of Forte and Crift. However, their trial testimony was in accord on the basic facts showing defendant's involvement in the robbery. Davis drove Forte and Crift in his car to the Citgo Service Station in Tallulah where Davis lived; Davis went into the station, ostensibly for the purpose of buying some gum; Davis exited the station and drove his vehicle a short distance away; Davis parked and gave the impression of having car trouble, while waiting for Forte to rob the station attendant; Davis drove Forte and Crift away from the crime scene and received his equal share of the stolen cash.
The station attendant knew Davis and identified him as the party who made a purchase of gum just minutes before the robberyand who had an opportunity to "case" the premises before the entrance of his cohort. Trooper Graham was familiar with Davis' car and observed it parked (with the hood up) near the Citgo Service Station shortly before the trooper was advised of the robbery.
In conclusion, considering the evidence in a light most favorable to the prosecution, we have determined that a rational trier of fact could have found the essential elements of the crime of which defendant was convicted to be proven beyond a reasonable doubt.
*686 The trial judge did not abuse his discretion in denying a new trial on this basis.
This assignment lacks merit.

Assignment of Error No. 10
In this assignment the defendant complains that the trial judge did not properly consider the guidelines of La.C.Cr.P. Art. 894.1 prior to imposition of sentence and that the sentence imposed is excessive.
Article 894.1 enumerates factors for the trial judge to consider in particularizing a sentence to the defendant, which factors include those militating for as well as against incarceration. While the trial court need not articulate every aggravating and mitigating circumstance, the record must adequately reflect compliance with the spirit of this codal mandate in order that an appellate court may intelligently review the sentence attacked as excessive. Reported cases explicating these principles are now so legion that citation is unnecessary.
We find in this case that the trial judge substantially complied with Article 894.1 by expressly adverting to pertinent factors which he gave due consideration before imposing sentence.
Defendant next asserts that the sentence to seven years imprisonment at hard labor (the maximum imposable for simple robbery) is excessive.
A sentence is excessive if it is grossly out of proportion to the severity of the crime or if it is nothing more than a purposeless and needless imposition of pain and suffering. State v. Willis, 420 So.2d 962 (La.1982).
The imposition of a maximum possible sentence usually can only be justified in extreme casesclassified as such by the factual circumstances of the offense and the apparent dangerous proclivities of the defendant.
In this case the trial judge appropriately observed that the record evidence would have supported a conviction of the serious crime of armed robbery. Obviously, the service station attendant was exposed to the real possibility of suffering great bodily harm or even death. As the trial judge further noted, defendant used his experience as a former law enforcement officer "to conceal the crime, to divert the police, to avoid apprehension and to participate in the fruits of the robbery."
Under the circumstances of this case, in view of the gravity of the offense actually committed and the threat to human life which was involved, there was no abuse of trial court discretion in the imposition of the maximum possible sentence. See State v. Robinson, 423 So.2d 1053, 1063 (La.1982).
This assignment is without merit.

Decree
For the reasons explained, defendant's conviction and sentence are affirmed.